David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Henderson, NV 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

Attorney for Plaintiff
*EMILY MILES*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| EMILY MILES, | : Civil Action No.: _____ |
| Plaintiff, | |
| v. | |
| 1ST FINANCIAL BANK USA, | **COMPLAINT** |
| Defendant. | |

For this Complaint, the Plaintiff, EMILY MILES, by undersigned counsel, states as follows:

## JURISDICTION

1. This action arises out of Defendant's violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA") by negligently, knowingly, and/or willfully placing automated calls to Plaintiff's cellular phone without consent, thereby violating the TCPA.

2.     This action is also brought under Nevada Revised Statutes Chapter 598.0918 ("NRS 598") and Nevada Revised Statutes Chapter 41.600 *et seq.* ("NRS 41.600") for Defendant's deceptive trade practices as further described herein.

3.     Plaintiff alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

4.     Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 and this Court has original jurisdiction over Plaintiff's TCPA claims. *Mims v. Arrow Fin. Serv., LLC*, 132 S.Ct. 740 (2012).

5.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) & (c), because Plaintiff resides within the District of Nevada, a substantial portion of the events or omissions giving rise to the claim occurred in this District, and Defendant regularly conducts business in this District.

## **PARTIES**

6.     The Plaintiff, EMILY MILES ("Plaintiff" or "Emily Miles"), is an adult individual residing in Las Vegas, Nevada.

7.     Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

8.     Defendant 1ST FINANCIAL BANK USA ("FFB"), is doing business in the State of Nevada.

9. Defendant is and at all times mentioned herein was, a corporation and is a "person," as defined by 47 U.S.C. § 153 (39).

10. FFB at all times acted by and through one or more of its agents or representatives.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

11. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

12. The TCPA regulates, among other things, the use of automated telephone dialing systems.

13. 47 U.S.C. § 227(a)(1) defines an automatic telephone dialing system ("ATDS") as equipment having the capacity –

> (A)  to store or produce telephone numbers to be called, using a random or sequential number generator; and
>
> (B)  to dial such numbers.

14. Specifically, 47 U.S.C. § 227(1)(A)(iii) prohibits any call using an ATDS or an artificial or prerecorded voice to a cellular phone without prior express consent by the person being called, unless the call is for emergency purposes.

15. According to findings by the Federal Communications Commission ("FCC"), such calls are prohibited because automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls. The

FCC also recognized that wireless customers are charged for incoming calls.[1]

16. On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and prerecorded calls to a wireless number by a creditor, or on behalf of a creditor, are permitted only if the calls are made with the "prior express consent" of the called party.[2]

17. On July 10, 2015, the FCC issued FCC Order 15-72, wherein the FCC[3] stated that "[a] caller may not limit the manner in which revocation [of prior express consent to call] may occur" and that the "burden is on the caller to prove it obtained the necessary prior express consent". *Id*. at ¶ 30.

18. Further, consumers (like the Plaintiff) may revoke consent through any reasonable means. *Id*. at ¶ 47.

19. Nothing in the language of the TCPA or its legislative history supports the notion that Congress intended to override a consumer's common law right to revoke consent. *Id*. at ¶ 58.

---

[1] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

[2] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C.R. 559, 23 FCC Rcd 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (2008).

[3] See Declaratory Ruling and Order, Adopted June 18, 2015 and Released July 10, 2015 regarding *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, WC Docket No. 07-135 (https://apps.fcc.gov/edocs_public/attachmatch/FCC-15-72A1.pdf).

20. Indeed, some consumers may find unwanted intrusions by phone more offensive than home mailings because they can cost them money and because, for many, their phone is with them at almost all times. *Id.* at ¶ 61.

21. Consumers have a right to revoke consent, using any reasonable method including orally or in writing. *Id.* at ¶ 64.

## ALLEGATIONS APPLICABLE TO ALL COUNTS

22. Several years prior to filing the instant complaint, the Plaintiff's daughter opened an account with FFB (the "Account").

23. The Plaintiff was a co-signor on the Account for her daughter, but otherwise maintained no relationship with FFB.

24. Within the four years prior to filing the instant complaint, the Plaintiff received numerous calls from FFB from (at least) the following phone numbers: (713) 574-8973; (330) 615-6277; (313) 263-5101; (704) 504-7607; (703) 873-7117; (414) 255-0231; (667) 401-8939; (502) 912-8393; (317) 671-8078; (646) 791-4849; (504) 636-6347; and (615) 490-0977.

25. When FFB called for the Plaintiff's daughter on the Account, the Plaintiff explained to FFB's representatives that her daughter had moved to another state and that the Plaintiff would not be paying for her daughter's credit card bill.

26. The Plaintiff further advised FFB to cease calls to her cell phone regarding the Account, thereby revoking FFB's consent to call the Plaintiff's cell phone on the Account.

27. Additionally, within the four years prior to filing the instant complaint, FFB also called the Plaintiff asking to speak with Deloria Green. The Plaintiff had no idea who Deloria Green was and advised FFB to cease calling her cell phone for any reason.

28. Indeed, in or before early June 2015, Plaintiff requested FFB to stop calling, thereby revoking any consent that may have been given to FFB to call her cell phone.

29. However, the FFB continued calling the Plaintiff nearly every day even after she demanded FFB cease calls on either the Account or for Deloria Green even after her June 2015 revocation (the "Revocation").

30. Making matters worse, FFB's calls were communicated through pre-recorded messages, which made it impossible for the Plaintiff, despite her numerous admonishments to cease calls as early as June 2015, to talk with a live FFB representative to demand the calls cease.

31. Despite the Revocation and any modicum of decency, FFB placed annoying calls to the Plaintiff up to eight (8) times a day and often used multiple phone numbers to place the calls as seen from the above litany of numbers. This

made it impossible for the Plaintiff to differentiate between important calls, and the unwanted auto-dialed and pre-recorded calls being placed by FFB.

32. On almost a daily basis, the Defendant's calls would commence at 8am and continue through 8pm lasting for almost a year through April 2016.

33. During this period, the Defendant placed 100's of unwanted calls to Plaintiff.

34. When the Plaintiff could actually communicated with one of FFB's live representatives, she often reminded FFB of her Revocation, and instructed FFB almost every time to stop placing calls to her cell phone and further advised, time and again, that FFB was also calling for the wrong person (Mrs. Green) in many instances.

35. Notwithstanding the Plaintiff's efforts to cease the calls, the Defendant persisted in its call campaign – seeking out the wrong parties notwithstanding the Plaintiff's meaningful attempts to stop the misdirected calls; or just flatly disregarding the Revocation.

36. Adding to the Plaintiff's annoyance, in the event she ignored a call from the Defendant, the Defendant would often call her back within minutes and sometimes within seconds of the ignored call.

37. This suit results from FFB's above harassment.

38. Upon information and belief, FFB employs an automatic telephone dialing system ("ATDS") which meets the definition set forth in 47 U.S.C. § 227(a)(1).

39. In each call described above, FFB or its agent/s contacted Plaintiff on Plaintiff's cellular telephone number ending in "2745" via an ATDS as defined by 47 U.S.C. § 227(a)(1), as prohibited by 47 U.S.C. § 227(b)(1)(A).

40. Moreover, the calls were often made using a pre-recorded voice or pre-recorded messages.

41. In the calls that Plaintiff did answer, there would be a short pause lasting about two to three seconds between the time the calls were answered and the time that a live agent introduced themselves as a representative from Defendant.

42. Upon information and belief, based on the pause and lack of prompt human response during the phone calls in which Plaintiff answered, Defendant used a predictive dialing system to place calls to Plaintiff.

43. "A predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists [caller] in predicting when an [agent] will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012).

44. The Federal Communications Commission ("FCC") has determined that predictive dialing systems are a form of an automatic telephone dialing system. *Id.*

45. Upon information and belief, the predictive dialing system employed by Defendant transfers the call to a live agent once a human voice is detected, thus resulting in a pause after the called party speaks into the phone.

46. Although the Plaintiff believes that FFB never obtained consent to call the Plaintiff's cell phone, nonetheless the Plaintiff instructed FFB or its agent(s) not to call the Plaintiff's cell phone on numerous occasions as early as June 2015 thereby revoking consent, if any ever existed, to be contacted by Defendant via an ATDS.

47. That said, the Defendant did not have prior express consent to place any automated or prerecorded calls to Plaintiff on Plaintiff's cellular telephone at any time for Mrs. Green.

48. However, Defendant placed calls to the Plaintiff's cellular telephone without consent using an ATDS in violation of the TCPA.

49. Defendant's ATDS has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

50. The telephone number that Defendant used to contact Plaintiff was and is assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

51. Defendant's calls to Plaintiff's cellular telephone were not for "emergency purposes."

52. Pursuant to the TCPA and the FCC's January 2008 Declaratory Ruling, the burden is on Defendant to demonstrate that it had prior express consent to call Plaintiff's cellular phone with an ATDS.

53. The Plaintiff suffered actual harm and loss, since each of the unwanted calls depleted the Plaintiff's cell phone's battery, and the cost of electricity to recharge the phone is a tangible harm. While small, this cost is a real one, and the cumulative effect can be consequential, just as is true for exposure to X-rays resulting from the Defendant's unwanted phone calls to the Plaintiff's cell phone.

54. Plaintiff also suffered from an invasion of a legally protected interest by placing calls to the Plaintiff's personal phone line when the Defendant had no right to do so, resulting in an invasion of Plaintiff's right to privacy. The TCPA protects consumers from this precise behavior.

55. Plaintiff has a common law right to privacy. *E.g.*, Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 1155, 193 (1890). Congress sought to further protect that right by enacting the TCPA.

56. Plaintiff was also personally affected by each and every call, since the Plaintiff felt that the Plaintiff's privacy had been invaded when the Defendant placed calls to the Plaintiff's phone line without any consent to do so.

57. The injury suffered by Plaintiff is concrete because Defendant's violations caused Plaintiff to suffer an invasion of privacy, annoyance, loss of battery life and exposure to cell phone emissions she did not consent to.

58. This lawsuit results.

## COUNT I

### Negligent Violations of the Telephone Consumer Protection Act, (47 U.S.C. § 227, *et seq*.)

59. Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

60. Defendant negligently placed multiple automated calls to cellular numbers belonging to Plaintiff without Plaintiff's prior express consent.

61. Each of the aforementioned calls by Defendant constitutes a negligent violation of the TCPA.

62. As a result of Defendant's negligent violations of the TCPA, Plaintiff is entitled to an award of $500.00 in statutory damages for each call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B).

63. Additionally, Plaintiff is entitled to and seek injunctive relief prohibiting such conduct by Defendant in the future.

…

…

…

## COUNT II

### Knowing and/or Willful Violations of the Telephone Consumer Protection Act, (47 U.S.C. § 227, *et seq.*)

64. Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

65. Defendant knowingly and/or willfully placed multiple automated calls to cellular numbers belonging to Plaintiff without Plaintiff's prior express consent.

66. Each of the aforementioned calls by Defendant constitutes a knowing and/or willful violation of the TCPA.

67. This is further evidenced by the Plaintiff advising the Defendant that it was calling the wrong number, yet (notwithstanding this knowledge) the Defendant persisting in placing calls to a known wrong party.

68. As a result of Defendant's knowing and/or willful violations of the TCPA, Plaintiff is entitled to an award of treble damages up to $1,500.00 for each call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

69. Additionally, Plaintiff is entitled to seek injunctive relief prohibiting such conduct by Defendant in the future.

…

…

…

## COUNT III

### Defendant's Violations of Nevada's
### Deceptive Trade Practices Act
### (NRS 598.0918)

70. Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

71. "Solicitation" means "the act of . . . seeking to obtain" something – in this case money.  *Solicitation*, Black's Law Dictionary (2d Pocket Ed. 2001).

72. Here, the Defendant solicited the Plaintiff to seek or obtain money from the Plaintiff.

73. On March 13, 2001, Assembly Bill 337 (AB 337) was introduced to the Nevada State Legislature.  AB 337 revised Nevada's Deceptive Trade Practices statutes codified at NRS 598 et seq.

74. As expressed by Marilyn Skibinski, Regulatory Analyst, Bureau of Consumer Protection, AB 337 was enacted to "provide[] additional protection for consumers."  *See Minutes of the Meeting of the Assembly Committee on Commerce and Labor*, 71st Session, April 4, 2001, page 1082, which can be viewed at http://www.leg.state.nv.us/Division/Research/Library/LegHistory/LHs/2001/AB337,2001.pdf (the "AB 337 Minutes").

75. Further, AB 337 was specifically intended to apply to companies (like the Defendant) using "automatic calling" or automated dialing systems.  As Ms.

Rushton stated in response to Senator Maggie Carlton, "[that] is exactly what [AB 337 is intended to do." *Id*. at page 4093.

76. In specific, AB 337 made it a deceptive trade practice to, during a solicitation by telephone, to:

   a. Repeatedly or continuously conduct the solicitation or presentation in a manner that is considered by a reasonable person to be annoying, abusive or harassing;
   b. Solicit a person by telephone at his or her residence between 8 p.m. and 9 a.m.

77. On numerous occasions Defendant violated NRS 598.0918(3) by placing calls to Plaintiff's telephone before 9:00 a.m. and after 8:00 p.m. Specifically, Defendant placed calls to Plaintiff's cell phone before 9:00 a.m. and after 8:00 p.m. on (at least) the following dates and times:

- August 16, 2015 at 8:07am
- August 17, 2015 at 8:15am
- August 19, 2015 at 8:17am
- August 21, 2015 at 8:03am
- August 21, 2015 at 8:03am
- August 23, 2015 at 8:05am
- August 24, 2015 at 8:04am
- August 30, 2015 at 8:53am
- October 1, 2015 at 8:02am
- October 2, 2015 at 8:19am
- October 2, 2015 at 8:19am
- October 6, 2015 at 8:01am
- October 6, 2015 at 8:01am
- October 7, 2015 at 8:01am
- October 8, 2015 at 8:09am
- October 10, 2015 at 8:41am
- October 12, 2015 at 8:04am

- October 13, 2015 at 8:13am
- October 19, 2015 at 8:09am
- October 20, 2015 at 8:05am
- October 24, 2015 at 8:04am
- October 26, 2015 at 8:05am
- October 27, 2015 at 8:03am
- October 28, 2015 at 8:06am
- October 29, 2015 at 8:05am
- October 29, 2015 at 8:05am
- November 6, 2015 at 8:42am
- November 9, 2015 at 8:05am
- November 10, 2015 at 8:03am
- December 28, 2015 at 8:09am
- December 29, 2015 at 8:05am
- January 4, 2016 at 8:13am

78. Defendant repeatedly and continuously placed telephone calls to the Plaintiff's residential phone (which is also the Plaintiff's cellular phone) to solicit money from the Plaintiff in a manner that would be considered annoying, abusive or harassing by a reasonable person.

79. Specifically, Defendant placed calls to Plaintiff's cell phone even after the Plaintiff demanded Defendant cease calls to the Plaintiff in or before June 2015. Such conduct is unquestionably harassing and annoying.

80. On numerous occasions Defendant placed five (5) or more calls to Plaintiff's cell phone in a single day on (at least) the following dates and times:

- September 24, 2015
- October 2, 2015
- October 7, 2015
- October 29, 2015
- November 12, 2015

- November 17, 2015
- November 18, 2015
- December 10, 2015

81. As a direct consequence of Defendant's harassing phone calls, acts, practices and conduct, the Plaintiff suffered and continues to suffer from anger, anxiety, emotional distress, frustration, rage, headaches, an upset stomach, heart palpitations, and has otherwise been totally annoyed by Defendant's intrusive and illegal phone calls. Plaintiff has also lost the use of personal and family time while enduring these frustrations, as well as lost time and minutes from cell phone use, for which the Plaintiff is charged a fee.

82. Defendant therefore violated NRS 598.0918(2).

83. Defendant's violations of NRS 598.0918 constitute violations of NRS 41.600 and the Plaintiff is entitled to relief under NRS 41.600.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff prays that judgment be entered against the Defendant awarding the Plaintiff:

1. Injunctive relief prohibiting such violations of the TCPA by Defendant in the future;

2. Statutory damages of $500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B);

3. Treble damages of up to $1,500.00 for each and every call in violation

of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(C);

4. Actual damages including, but not limited to, the emotional distress the Plaintiff has suffered (and continues to suffer) as a result of the intentional, reckless, and/or negligent violations of NRS 598.0918 as permitted under NRS 41.600;

5. An award of attorney's fees and costs to counsel for Plaintiff; and

6. Such other relief as the Court deems just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: October 31, 2016

Respectfully submitted,
By: /s/ David H. Krieger, Esq.
David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Avenue, Suite 350
Henderson, Nevada 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

Attorney for Plaintiff
*EMILY MILES*